FILED
2012 Sep-17  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NATASHA MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number: 2:10-CV-3354-SLB** |
| | ) | |
| **CORPORATE   FACILITIES** | ) | |
| **MANAGEMENT, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment, (doc. 15),[1] and plaintiff's Motion to Strike, (doc. 18). Plaintiff Natasha Moore has sued her former employer, defendant Corporate Facilities Management, alleging that it discriminated against her on the basis of her gender and that it retaliated against her for complaining about discrimination, in violation of federal law. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiff's Motion to Strike, (doc. 18), is due to be granted, and defendant's Motion for Summary Judgment, (doc. 15), is due to be denied.

## I. MOTION TO STRIKE

Plaintiff contends, "Defendant violated Plaintiff's rights under Title VII by (a) subjecting her to sexual harassment that constituted a hostile environment and culminated in an

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

adverse employment action, and (b) terminating her employment in retaliation for her opposition to the sexual harassment to which she was subjected." (Doc. 1 ¶ 21.) Plaintiff contends that her supervisor, Greg Tonico,[2] harassed her; she testified:

> From the first day I worked [for defendant], Mr. [Tonico] subjected me to sexual harassment. He would brush his hand on my butt. He would talk about sex, ask me about my sex life, and ask me when I had sex. He told me when a guy takes you out and buys you dinner, you either get out, hitch hike, or fight. He said he wanted to come over to my house and get in bed with me. He would talk about bodies of female celebrities and members of the church we were working in. he would walk up real close to me and get in my face or walk up behind me very quietly and get real close to me to where I could feel his breath on my face. He made noises like we were have sex. He made comments about my butt. He did these things every day.

(Doc. 19 at 4.) Plaintiff worked for defendant from August 4, 2008, until she was terminated on September 5, 2008. (Doc. 1 ¶ 17; doc. 19 at 4, 6.) Plaintiff contends that Tonico fired her and that he told her it was because she had asked a member of the church where Tonico was. (Doc. 19 at 8.)

Defendant has moved for summary judgment on the following grounds:  (1) the alleged harassment was not severe or pervasive, (doc. 16 at 7); (2) defendant is not strictly liable for Tonico's harassment because Jeremy Spratling, defendant's registered agent and sole member, (doc. 19 at 8-9), made the decision to terminate plaintiff not Tonico, (*id*. at 9-10); (3) defendant is entitled to the *Faragher/Ellerth* affirmative defense because it had an

---

[2]In her Complaint and her Declaration, plaintiff spells her supervisor's name as "Toneco." (Doc. 1 ¶ 8; doc. 19 at 4.) It appears that the correct spelling is "Tonico." (*See* doc. 14 at 1; doc. 20 at 1.)

effective anti-harassment policy that plaintiff unreasonably failed to follow, (*id*. at 10-11); and (4) plaintiff cannot prove a causal connection between protected activity and her termination sufficient to support her retaliation claim because Spratling, not Tonico, made the decision to terminate her and Spratling was unaware of her protected activity.

In support of its Motion for Summary Judgment, defendant has submitted Spratling's Declaration with attached exhibits, including defendant's anti-harassment policy, the first page of plaintiff's application,[3] and four Written Counseling/Incident Reports,[4] including one indicating that Spratling terminated plaintiff.[5] (Doc. 16-1.) Plaintiff has moved to strike this evidence on the ground that defendant did not disclose any of this evidence before the

---

[3]Plaintiff testified that her application was more than one page.

[4]Three of the Written Counseling/Incident Reports indicate that Spratling verbally counseled plaintiff regarding her work performance. (Doc. 16-1 at 12, 14, 16.) Although the forms provide a space for plaintiff to sign the Reports, plaintiff did not sign any of these Reports. (Doc. 16-1 at 12, 14, 16, and 18.) Moreover, plaintiff denies ever meeting Spratling or receiving any disciplinary action. (Doc. 19 at 5-6.)

[5]Spratling noted, "Ms. Moore was reprimanded about not following the chain of command and reporting erroneous information that was detrimental to the business relationship between [defendant] and [the church]. We had no other option at this point but to release Ms. Moore from employment from [defendant]. (Doc. 16-1 at 18.) Plaintiff did not sign this Report. (*Id*.)

3

deadline set forth in the court's Scheduling Order.[6]  (Doc. 18.)  Defendant contends that any failure to disclose Spratling was harmless.  (Doc. 22 at 2.)

The Scheduling Order, entered on May 11, 2011, required the parties to "exchange the information required by Local Rule 26.1(a)(1) by June 10, 2011."  (Doc. 9 ¶ 2.)  Local Rule 26.1 states:

> Except to the extent otherwise ordered, a party shall, without awaiting a discovery request:
>
> > (A)  provide to other parties the name and, if known, the address and telephone number of each individual believed by it to have discoverable non-privileged personal knowledge concerning any significant factual issue specifically raised in the pleadings or identified by the parties in their report to the court under Fed. R. Civ. P. 26(f), appropriately indicating the subjects about which the person has such knowledge;
>
> > (B)  make available to other parties for inspection and copying, as under Fed. R. Civ. P. 34, all documents, data compilations, and tangible things in its possession, custody, or control that may be used by it (other than solely for impeachment purposes) to support its contentions with respect to any significant factual issue in the case . . . .

L.R. 26.1(a)(1).  The Local Rule is substantially similar to Fed. R. Civ. P. 26(a)(1)(A), which provides:

---

[6]The Scheduling Order provides that initial disclosure were due on or before June 10, 2011, and the parties were required to "fully update[ ]" their initial disclosure by November 1, 2011.  (Doc. 9 at 2, 3.)  The discovery deadline was December 5, 2011.  (*Id.* at 2.)  Defendant served its disclosures on December 12, 2011, a week after the close of discovery. (Doc. 18 at 2, 8.)

[A] party must, without awaiting a discovery request, provide to the other parties:

> (i)  the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

> (ii)  a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

Initial disclosures under Local rule 26.1(a)(1) "are subject to a duty of supplementation, as provided in Fed. R. Civ. P. 26(e)(1), at least 30 days before the end of period allowed for discovery."  L.R. 26.1(a)(1).  Rule 26(e) of the Federal Rules of Civil Procedures states:

A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . .

> (A) in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).  The Scheduling Order required the parties to supplement their initial disclosures by November 1, 2011, slightly over a month before the discovery cutoff deadline of December 5, 2011.  (Doc. 9 at 3.)

Defendant served its Initial Disclosures on December 12, 2011 – six months after the deadline for the exchange of initial disclosures and a month after the deadline for supplementing initial disclosures.  (Doc. 18 at 3; doc. 9 at 2, 3.)  In its initial disclosures, defendant noted that Spratling "is a principal at CFM and would have information regarding the plaintiff's claims and defendant's defenses."[7]  (Doc. 18 at 6.)  According to defendant, Spratling made the decision to terminate plaintiff.  (*See* doc. 16 at 3.)  As such, Spratling is an individual with "discoverable non-privileged personal knowledge concerning [a] significant factual issue specifically raised in the pleadings." L.R. 26.1(a)(1)(A).

Defendant also noted that it "shall, subject to any Orders of Protection or privileges, produce such documents, data compilations and tangible things that may later be discovered. Other documents, including Written Counseling/Incident Reports regarding the plaintiff will be made available for inspection and copying upon request."  (Doc. 18 at 2.)  There is no indication that the documents attached to Spratling's Declaration were actually given to plaintiff before defendant filed these documents with its Motion for Summary Judgment. Evidence of defendant's anti-harassment policy and reports of discipline allegedly meted out by Spratling are "documents . . . that may be used by [defendant] . . . to support its contentions with respect to any significant factual issues in the case."   Local Rule

---

[7]Defendant's overly broad description of the subject of Spratling's knowledge – "the plaintiff's claims and the defendant's defenses" – does not indicate that Spratling was the decisionmaker with regard to plaintiff's termination, the focus of his testimony.  Whether this description of the subject matter of his knowledge would have satisfied defendant's obligation under Local Rule 26.1 if timely filed is not before the court.

26.1(a)(1)(B).  These documents, as demonstrated by defendant's Motion for Summary Judgment, are relevant to defendant's *Faragher/Ellerth* affirmative defense and to proving Spratling was the decisionmaker.  The court finds that defendant was required to disclose this evidence within the deadlines set by the court's Scheduling Order.

Rule 37(c)(1) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), ***the party is not allowed to use that information or witness to supply evidence on a motion***, at a hearing, or at a trial, ***unless the failure was substantially justified or is harmless***."  Fed. R. Civ. P. 37(c)(1)(emphasis added).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."  *Mitchell v. Ford Motor Co.*,  318 Fed. Appx. 821, 824 (11th Cir. 2009)(quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006))(unpublished).  "[W]hen a party fails to comply with Rule 26, the district court does not abuse its discretion by striking an affidavit submitted in opposition to summary judgment, pursuant to Rule 37(c).  *Id*. at 317-18 (citing *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-58 (2006)).

The failure to disclose is "substantially justified" if  "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011)(quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))(internal quotations omitted).  Among the facts the court considers in deciding to exclude testimony from a witness that was not properly

disclosed are "(1) the importance of the testimony; (2) the reason for the [defendant's] failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Faulk v. Volunteers of America*, 444 Fed. Appx. 316, 317 (2011)(quoting *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004))[unpublished].

Defendant does not argue that its failure to disclose this evidence was justified or offer any explanation as to why it did not disclose this evidence within the time limits set by the Scheduling Order.   Therefore, the court finds defendant's failure to disclose Spratling and the documents attached to his Declaration was not substantially justified.

Also the court finds that the failure to disclose this evidence was not harmless.

The Advisory Committee Note to the 1993 amendment to Rule 37(c) gives examples of "harmless" violations: "e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party. . . ." Advisory Committee Notes, Rule 37(c)(1993 Amendments). "This commentary strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance* [*v. United States of America*, No. 98-5488,] 1999 WL 455435 at *5 [(6th Cir. June 25, 1999)(unpublished)].

*Wright v. Hyundai Motor Mfg. Alabama, LLC*, Civil Action No. 2:08CV61–SRW, 2010 WL 4739486, *4 (M.D. Ala. Nov. 16, 2010).

As noted above, defendant does not indicate its reason for not disclosing this evidence; it does not contend that the failure to disclose was caused by an honest mistake. Also, it does not argue the importance of this evidence, although that it clear to the court.

8

The only argument made by defendant in opposition to plaintiff's Motion to Strike is that plaintiff has not suffered any prejudice.  Defendant contends that plaintiff was aware of Spratling's identity because he is defendant's registered agent and sole member.  (Doc. 22 at 2.)  It also contends, "Whether [Spratling] was specifically identified in discovery did not preclude the plaintiff from seeking information regarding [plaintiff's] discipline and ultimate termination . . . .  Therefore, the plaintiff cannot sit back now and contend that she was prejudiced because she did not pursue any discovery relative to those issues." (*Id*.)  The court disagrees.

According to her Motion to Strike, "plaintiff never met or heard of Spratling, does not know who he is, and never saw or received the disciplinary actions he says he gave her." (Doc. 18 at 3; see also doc. 19 at 5-6.)  She contends she was terminated by Greg Tonico, the alleged harasser.  (Doc. 1 ¶ 17; doc. 18-3; doc. 19 at 6.)  Contrary to defendant's assertion, even if the court assumes that plaintiff's attorney was aware Spratling was the registered agent and owner of defendant, "the court would not expect plaintiff to depose a person that defendant did not intend to use as a witness.  Merely having to depose a party on information that should have been disclosed in a Rule 26 Report is a form of prejudice."  *Ripps v. Powers*, Civil Action No. 07–0832–CG–B, 2010 WL 3339514, *2 (S.D. Ala. Aug. 24, 2010)(quoting *McClain v. Metabolife International, Inc.*, 193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2002))(internal quotations omitted).  Clearly, plaintiff was prejudiced by defendant's failure to disclose Spratling and the documents attached to his Declaration, which form the

basis of defendant's defense to plaintiff's claims; due to the failure to disclose plaintiff had no opportunity to depose Spratling within the time allowed by the court's scheduling order. *Nance v. Ricoh Electronics, Inc.*, 381 Fed. Appx. 919, 923 (11th Cir. 2010); *Pickering v. Lorillard Tobacco Co., Inc.*, NO. 2:10-CV-633-WKW, 2012 WL 314691, *15 (M.D. Ala. 2012); *Brown v. Berg Spiral Pipe Corp.*, NO. CIV.A. 10-237-CG-B, 2011 WL 3610646, *9 (S.D. Ala. Aug. 17, 2011).  Therefore, the court finds that defendant's failure to disclose within the time set forth in the court's Scheduling Order was not harmless.

Because the court finds that defendant did not timely provide its initial disclosures and that this failure was not justified or harmless, plaintiff's Motion to Strike is due to be granted. The evidence submitted by defendant in support of its Motion for Summary Judgment will be stricken and has not been considered in deciding defendant's Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT

### A.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett,* 477 U.S.

317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support
> the assertion by:
>
> > (A)  citing to particular parts of materials in the record, including
> > depositions, documents, electronically stored information, affidavits or
> > declarations, stipulations (including those made for purposes of the
> > motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B)  showing that the materials cited do not establish the absence or
> > presence of a genuine dispute, or that an adverse party cannot produce
> > admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state

that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Id.* at 249.   "[C]ourts are required to view the facts and draw reasonable

inferences 'in the light most favorable to the party opposing the [summary judgment]

motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*,

369 U.S. 654, 655(1962) (per curiam)).   Nevertheless, the non-moving party "need not be

given the benefit of every inference but only of every reasonable inference." *Graham v.

State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of

Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380

11

("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## B.  STATEMENT OF FACTS

The following Statement of Facts is derived from defendant's Statement of Facts that plaintiff has admitted.  As defendant's evidence in support of its Motion for Summary Judgment is due to be stricken, none of the facts set forth in its Brief in Support of its Motion for Summary Judgment are supported by a citation to record evidence as required by Exhibit A to the Scheduling Order.  (Doc. 9-1 at 3.)  Therefore, the court assumes only the following facts submitted by defendant, which plaintiff admits, are true.

Defendant "provides commercial janitorial services, commercial floor care programs and facilities management services to commercial customers."  (Doc. 16 at 2; *see* doc. 20 at 3.)  "On or about August 4, 2008, [defendant] hired [plaintiff] and assigned her to perform janitorial services at the Shades Crest Baptist Church job site."  (Doc. 16 at 2; *see* doc. 20 at 3.)

Defendant did not file a Reply Brief; therefore, it has not disputed any fact submitted by plaintiff.  Therefore, for purposes of deciding defendant's Motion for Summary Judgment, the court assumes defendant has admitted the following facts.  (*See* doc. 9-1 at 6.)

1.  At Shades Crest Baptist Church where [plaintiff] worked, Tonico supervised all [defendant's] employees working there.  [(Doc. 19 at 4.)]

2.  [Plaintiff] was the only female working there for [defendant].  [(*Id*.)]

. . .

[3].  From the first day [plaintiff] worked with [defendant], Tonico subjected her to sexual harassment:

(a)  He would brush his hand on [plaintiff]'s butt.
(b)  He would talk about sex, ask [plaintiff] about her sex life, and ask her when she had sex.
(c)  Tonico told [plaintiff] that when a guy takes you out and buys you dinner, you either put out, hitch hike, or fight.
(d)  Tonico said that he wanted to come over to [plaintiff]'s house and get in bed with her.
(e)  Tonico would talk about bodies of female celebrities and members of the Church.
(f)  Tonico would walk up real close to [plaintiff] and get in her face or walk up behind her very quietly and get real close to her to where she could feel his breath on her face.
(g)  Tonico made noises like he and [plaintiff] were having sex.
(h)  Tonico made comments about [plaintiff]'s butt.

[(*Id.*)]

[4].  Tonico did these things to [plaintiff] every day.  [(*Id.*)]

[5].  Tonico's actions and comments were very distressing and offensive to [plaintiff].  [(*Id.*)]

[6].  [Plaintiff] told Tonico several times that she did not want to hear these things he said or him touch her, and when he would stand too close to her she would push him away.  [(*Id.*)]

[7].  However, Tonico would not stop.  [(*Id.*)]

[8].  [Plaintiff] got to where she would try to avoid Tonico, which was hard to do.  [(*Id.*)]

[9].  [Plaintiff] would try to keep her dealings with Tonico as short as possible to avoid his sexual comments and actions.  [(*Id.*)]

[10].  [Plaintiff] would try to keep her conversations with Tonico only about their work.  [(*Id.*)]

[11].  After awhile, Tonico seemed to have a problem with that and said that [plaintiff] was getting a bad attitude.  [(*Id.* at 4-5.)]

[12].  However, [plaintiff] just wanted to keep conversations with Tonico short and not deal with him unless she had to so that she could avoid the sexual harassment.  [(*Id.* at 5.)]

[13].  [Plaintiff] never said or did anything disrespectful to Tonico and never refused to do anything.  [(*Id.*)]

[14].  [Plaintiff] never yelled or screamed or tried to create a confrontation.  [(*Id.*)]

[15].  [Plaintiff] does not know who Jeremy Spratling is and never met or talked to him.  [(*Id.*)]

[16].  There was a man who came to the Church a few times and seemed to be Tonico's boss.  [(*Id.*)]

[17].  [Plaintiff] never met or talked to this man either.  [(*Id.*)]

[18].  [Plaintiff] never saw the disciplinary actions [defendant] submitted until her lawyer recently showed them to her.  [(*Id.*)]

[19].  The allegations in the disciplinary actions [defendant] has filed never happened.  [(*Id.*)]

[20].  Neither Jeremy Spratling nor the man who appeared to [plaintiff] to be Tonico's boss ever gave her any disciplinary action or said anything to her about her not doing her job.  [(*Id.*)]

[21].  Tonico never gave [plaintiff] any disciplinary action.  [(*Id.* at 6.)]

[22].  [Plaintiff] never got any disciplinary action from anyone while working for [defendant] and she was never told she was placed on probation.  [(*Id.*)]

14

[23].   [Plaintiff] never saw [defendant's] termination form until recently.  [(*Id.*)]

[24].   The allegations in it did not happen.  [(*Id.*)]

[25].   Spratling did not terminate [plaintiff].  [(*Id.*)]

[26].   Tonico terminated [plaintiff], and he was by himself when he did.  [(*Id.*)]

[27].   There was a member of the Church who was [defendant's] employees' contact that they were supposed to go to if they needed something or had a question.  [(*Id.*)]

[28].   On the date of her termination, [plaintiff] was looking for Tonico, ran into the contact, and asked her where Tonico was.  [(*Id.*)]

[29].   Tonico terminated [plaintiff] later that same day and said it was because she had asked the contact this.  [(*Id.*)]

[30].   Tonico never said anything about [plaintiff] having failed to follow the chain of command or reporting erroneous information, neither of which [plaintiff] did.  [(*Id.*)]

[31].   Tonico did not have or show [plaintiff] any papers when he fired her.  [(*Id.*)]

(Doc. 20 at 6-10.)

## C.  DISCUSSION

Defendant has moved for summary judgment on the following grounds:  (1) the alleged harassment was not severe or pervasive, (doc. 16 at 7); (2) defendant is not strictly liable for Tonico's harassment because Spratling made the decision to terminate plaintiff not Tonico, (*id.* at 9-10); (3) defendant is entitled to the *Faragher/Ellerth* affirmative defense because it had an effective anti-harassment policy that plaintiff unreasonably failed to follow,

(*id*. at 10-11); and (4) plaintiff cannot prove a causal connection between protected activity and her termination sufficient to support her retaliation claim because Spratling, not Tonico, made the decision to terminate her and Spratling was unaware of her protected activity.

### 1.  Severe or Pervasive Sexual Harassment

Defendant contends that the alleged incidents of harassment are not so objectively severe or pervasive  as to give rise to a hostile work environment.  (Doc. 16 at 7-8 [citing, *inter alia*, *Mitchell v. Pope*, 189 Fed. Appx. 911, 913-14 (11th Cir. 2006); *Simmons v. Mobile Infirmary Medical Center*, 391 F. Supp. 2d 1124, 1133 (S.D. Ala. 2005)] .)  The court disagrees.

"Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010)(citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998)(emphasis in *Reeves*).  "In evaluating allegedly discriminatory conduct, [the court] consider[s] its 'frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id*. at 808-09 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  "Stated otherwise, Title VII prohibits only the type of harassment that 'alter[s] the conditions of the victim's employment.'"  *Lara v. Raytheon Technical Service Co., LLC*, No. 11–15341, 2012 WL 1758604, *2 (11th Cir. May 17, 2012)(quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998))(unpublished).

Plaintiff testified that Tonico harassed her every day.  (Doc. 19 at 4.) Harassing conduct that occurs on a daily or "almost daily" basis has been found to have created a hostile work environment.  *See Guthrie v. Waffle House, Inc.*, No. 10–15090, 2012 WL 335629, *3 (11th Cir. Feb. 3, 2012) (citing *Reeves*, 594 F.3d 798, 804 (harassing conduct occurred on a daily basis); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)(harassing conduct in the form of ethnic slurs occurred three to four times a day for a month); *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 418 (11th Cir. 1999)(harassing conduct occurred on an "almost daily" basis)); *see also Nichols v. Volunteers of America, North Alabama, Inc.*, No. 10-15889, 2012 WL 1320125, *3 (11th Cir. Apr. 18, 2011)(reversing summary judgment because plaintiff had "presented evidence that she encountered racially hostile behavior and language . . . on a daily basis"); *Parker v. Atlanta Newspapers Name Holding Corp.*, 2006 WL 1594427, *2-3 (11th Cir. 2006).

In *Mitchell v. Pope*, the case cited by defendant, the Eleventh Circuit held that sixteen incidents of harassing conduct over four years – an average of one incident every three months – was not frequent.  *See Mitchell v. Pope*, 189 Fed. Appx. at 913.  Given the sporadic number of alleged incidents, the court finds the *Mitchell* decision does not support defendant's argument that the harassing conduct plaintiff alleges was infrequent.

Likewise, the decision in *Simmons v. Mobile Infirmary Medical Center*, the other case cited by defendant, concerned "sporadic incidents . . . occurring over at least five years." *Simmons*, 391 F. Supp. 2d at 1133.  After noting, incorrectly, that the law requires the

17

harassment to be severe **and** pervasive,[8] the court found that six or seven incidents of the harasser touching plaintiff on her breasts, hip, and leg did not cross this line. *Id*. Given the few number of incidents spread over a significant number of years, the court finds the *Simmons* decision does not support defendant's argument that the harassing conduct plaintiff alleges was infrequent.

A reasonable jury could find that a reasonable person in plaintiff's situation would have found the harassing conduct to be sufficiently frequent to pervade the work environment to such an extent that it altered plaintiff's working conditions.

Also, the court finds that the alleged harassing conduct is sufficiently similar to conduct found to be severe in *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501 (11th Cir. 2000). In that case, the Eleventh Circuit held the alleged harassing conduct – which included the harasser "giving [plaintiff] unwanted massages, standing so close to [plaintiff] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts) – was severe and physically threatening and humiliating. *Id*. at 509.

---

[8]As set forth, *supra*, the Eleventh Circuit has held that "either severity *or* pervasiveness is sufficient to establish a violation of Title VII. *Reeves*, 594 F.3d at 808 (emphasis in original). The *Simmons* court cited *Meritor Sav. Bank, FSB v. Vinson*, for its statement that the law requires both severity **and** pervasiveness. *Simmons*, 391 F. Supp. 2d at 1133 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). However, the Supreme Court in *Meritor* uses the disjunctive "or" – "For sexual harassment to be actionable, it must be sufficiently severe **or** pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank*, 477 U.S. at 67.

According to plaintiff, Tonico was always talking about sex and asking her about her sex life.  He talked about her behind and touched her behind.  He snuck up on her and stood in her personal space.  Also, he made noises like he was having sex with plaintiff.  All of this occurred in a Baptist Church.  A reasonable person in plaintiff's position would have felt humiliated and threatened by Tonico's preoccupation with sex, his sexual advances, his invasion of her personal space and his offensive touching.

Viewing the evidence in the light most favorable to plaintiff, the non-moving party, and drawing all reasonable inferences in her favor, a reasonable jury could find that the harassing conduct was severe, physically threatening, and humiliating.

Finally, the court finds a reasonable jury could find that the harassing conduct interfered with plaintiff's job performance.  Plaintiff testified that she tried to avoid Tonico in the work place and to limit her contact with him.  Moreover, a reasonable person in plaintiff's position would find Tonico's sneaking up on his subordinate, touching her behind, and his constant talking about sex in the workplace, which was a Baptist Church, unreasonably interfered with her job performance.

Based on the forgoing, the court finds that plaintiff's evidence of Tonico's harassing conduct is sufficient to allow a reasonable jury to find that the harassment was severe or pervasive.  Therefore, defendant's Motion for Summary Judgment on this ground will be denied.

### 2.  Decisionmaker – Spratling or Tonico

Defendant contends that it is entitled to summary judgment on plaintiff's sexual harassment claim and her retaliation claim because Spratling, not Tonico, decided to terminate plaintiff.  (*See* doc. 16 at 10, 11.)  If Tonico decided to terminate plaintiff as the culmination of his sexual harassment, defendant is strictly liable.  *Johnson*, 234 F.3d at 509 (The defendant employer is "strictly liable to [plaintiff] for [the] alleged harassment if (1) [the harasser] was [plaintiff's] supervisor; and (2) [the harasser] took a tangible employment action against [plaintiff] as a result of the sexual harassment.")(citing, *inter alia*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).  "In contrast, when the supervisor's harassment involves no adverse 'tangible employment action,' an employer can avoid vicarious liability for the supervisor's conduct by raising and proving the affirmative defense described in the Faragher and Ellerth cases . . ."  *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001)(citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807).

Plaintiff testified that Tonico terminated her.  (Doc. 19 at 6, doc. 20 at 10.)  She also testified that she never met Spratling or even talked to him.  (Doc. 19 at 5-6; doc. 20 at 9.)  For the reasons set forth above, these facts are undisputed.  Therefore, for purposes of deciding defendant's Motion for Summary, the court assumes Tonico, not Spratling, terminated plaintiff.  Because Tonico, the alleged harasser, terminated plaintiff,  defendant cannot assert the *Faragher/Ellerth* affirmative defense.

Therefore, defendant's Motion for Summary Judgment based on the *Faragher/Ellerth* affirmative defense will be denied.

Defendant also contends that it is entitled to judgment as a matter of law on plaintiff's retaliation claim because plaintiff cannot show a causal connection between her termination and her complaints about sexual harassment. Specifically, defendant contends Spratling was unaware of plaintiff's protected activity when he decided to terminate her.

"In order to show [the adverse employment action and the protected activity] were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008)(quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000)(citing *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997))). However, for the reasons set forth above, the fact that Tonico, not Spratling, terminated plaintiff is undisputed. Therefore, Spratling's lack of awareness that plaintiff had complained about sexual harassment is irrelevant to establishing the causal connection.

Therefore, defendant's Motion for Summary Judgment on the ground that there is no causal connection between plaintiff's termination and her protected activity because Spratling was unaware of any protected activity will be denied.

21

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff's Motion to Strike, (doc. 18), is due to be granted and defendant's evidence submitted in support of its Motion for Summary Judgment, (doc. 15), has not been considered in deciding its Motion for Summary Judgment.  Moreover, the court finds that defendant has not established that it is entitled to judgment as a matter of law.  An Order granting plaintiff's Motion to Strike, (doc. 18), and denying defendant's Motion for Summary Judgment, (doc. 15), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 17th day of September, 2012.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

22